**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| EILEEN MOORE, *as biological mother, next friend, and power of attorney for Donald E. Moore and Tyler E. Moore*, | ) | Case No. 1:26-cv-31 |
| *Plaintiff*, | ) | Judge Travis R. McDonough |
| v. | ) | Magistrate Judge Christopher H. Steger |
| BRADLEY COUNTY SCHOOLS, *et al.*, | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION**

Before the Court are motions to dismiss filed by Defendant Bradley County Schools ("Bradley County") (Doc. 24) and Defendant The American School, at Hartford, for the Deaf ("ASD") (Doc. 27). For the following reasons, the Court will **GRANT** the motions to dismiss.

## I. BACKGROUND

Donald E. Moore and Tyler E. Moore are deaf adult children of Eileen Moore.[1] In August 2024, Donald and Tyler enrolled in Bradley County Schools seeking to earn credits toward a high school diploma. (Doc. 20, at 3.) After enrolling, Donald and Tyler sought and obtained individualized education programs ("IEP" or "IEPs") that allowed them to receive educational services "in accordance with [the] Individuals [w]ith Disabilities Education Act, at Farris Institutions." (*Id.* at 1–3.) As part of their IEPs, Donald and Tyler enrolled in Bradley

[1] Representing that Donald and Tyler are potentially incompetent to bring this action on their own behalf, Eileen Moore is suing in her capacity as biological mother, next friend, and attorney in fact. (Doc. 20, at 1.) As stated in the amended complaint, this action seeks relief only for Donald Moore and Tyler Moore. (Doc. 20.)

County virtual school and received instruction through the school's virtual learning options. (*Id.* at 3.) According to Eileen Moore, she and Bradley County agreed that ASD would provide virtual instruction to Donald and Tyler at their residence. (*Id.*)

Donald and Tyler earned high-school credits under this approach until February 2025. (*Id.*) In February 2025, however, an ASD official notified Eileen Moore that ASD would cease providing in-residence virtual instruction on February 10, 2025. (*Id.*) ASD explained it made the decision because Eileen Moore was allegedly "eavesdropping" on Donald and Tyler's classwork, which violated the parties' agreement. (*Id.*) ASD also stated that Eileen Moore's actions constituted a violation of the Family Educational Rights and Privacy Act (FERPA). (*Id.* at 3–4.)

After ASD ceased providing in-residence services, Bradley County proposed that Donald and Tyler continue receiving virtual instruction from ASD by attending Bradley County's "brick-and-mortar virtual school," thereby allowing them to continue receiving "classroom content" that would give them the opportunity to earn credits toward graduation.[2] (*Id.* at 4.)

Eileen Moore alleges that the decision to end in-residence virtual instruction "adversely affected" Donald and Tyler's mental state and their "ability to learn and earn credits to graduate." (*Id.* at 4–5.) She also alleges that Donald and Tyler's medical providers advised that "any substantial disruption in the [students'] educational environment would greatly and adversely impact progress" and that Bradley County and ASD were aware of the medical providers' opinions prior to agreeing to provide in-residence instruction. (*Id.* at 4–5.)

[2] There are no allegations in the amended complaint indicating that Donald and Tyler attended the brick-and-mortar virtual school or have otherwise continued earning credits toward graduation since their in-residence services ceased in February 2025.

After ASD stopped providing in-residence learning instruction, and after Bradley County offered the brick-and-mortar virtual school option, Eileen Moore filed two requests for special education due process hearings with the Tennessee Department of Education.[3] (*Id.* at 5–6.)

Eileen Moore filed the present action on February 10, 2026 (Doc. 1), and filed an amended complaint on July 6, 2026 (Doc. 20). In her amended complaint, she asserts claims against Defendants for: (1) violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*; (2) violation of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, *et seq.*; (3) violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and (5) violations of Donald and Tyler's constitutional rights under 42 U.S.C. § 1983. (Doc. 20.) Bradley County and ASD have moved to dismiss the claims against them (Docs. 24, 27), and their motions are ripe for the Court's review.[4]

---

[3] These due process claims were attached as exhibits to Defendants' motions to dismiss (*see* Doc. 25.) The Court need not analyze and consider the substance of these complaints for purposes of resolving the pending motions to dismiss, but the Court notes that it properly may consider these exhibits because, as the Sixth Circuit has made clear, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). The Court may not, however, consider Eileen Moore's affidavit attached to her response to Defendants' motions to dismiss (Doc. 32-1.) This affidavit was not an exhibit attached to the amended complaint, a public record, an item appearing in the record of the case, or an exhibit attached to defendant's motion to dismiss that was referred to in the complaint. *See Bassett*, 528 F.3d at 430. In other words, the affidavit does not fall into one of the permitted categories of documents and exhibits that the Court may properly consider on a motion to dismiss.

[4] ASD joins Bradley County's motion to dismiss. The only additional ground for dismissal offered in ASD's motion is that, to the extent the Moores make an IDEA claim against ASD, that claim should be dismissed because ASD is a private entity and thus not within the IDEA's reach. (Doc. 27, at 2.) The Moores concede this issue in their response to Defendants' motions to dismiss. (Doc. 32, at 1.) Thus, the arguments set forth in Defendants' motions to dismiss are identical and will be considered together.

## II. STANDARD OF LAW

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[Rule 8] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the truth of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of truth, however, does not extend to legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. The factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. ANALYSIS

### A. Individuals with Disabilities Education Act ("IDEA")

Bradley County and ASD first argue that the Court should dismiss the IDEA claims because the Moores have not exhausted their administrative remedies. (Doc. 25, at 4–6.)

The IDEA "ensures that children with disabilities receive needed special education services." *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 157 (2017). To accomplish this goal, the IDEA offers federal funds to States in exchange for the commitment to provide a "free appropriate public education," or FAPE, "to all children with certain physical or intellectual disabilities." *See id.* at 158 (quoting 20 U.S.C.S. § 1401). The "primary vehicle" for providing children with a FAPE is an "individualized education program," commonly referred to as an "IEP." *Id.* The IEP "spells out a personalized plan to meet all of the child's 'educational needs.'" *Id.*

An IEP is designed by the child's "IEP Team," comprised of school officials, teachers, and parents. *Id.* In the case of disagreement on IEP issues, the IDEA "established formal procedures for resolving disputes." *Id.* at 159. An aggrieved parent may file a complaint "as to any matter concerning the provision of a FAPE with the local or state educational agency," which generally triggers a "[p]reliminary meeting" involving the parties, and then, "at their option, the parties may instead (or also) pursue a full-fledged mediation process." *Id.* (citing 20 U.S.C.S. § 1415). If disagreement persists after this process, the matter can proceed to a "due process hearing" in front of an impartial hearing officer." *Id.* This officer's decision granting substantive relief, if any, must be "based on a determination of whether the child received a [FAPE]." *Id.*

(quoting § 1415(f)(3)(E)(i)). This ruling may be appealable to the state agency. *Id.* Finally, at the end of this process, a dissatisfied parent can seek judicial review. *Id.*

Completion of the administrative process is a prerequisite to bringing an IDEA claim in federal court. *See Alzandani v. Hamtramck Pub. Schs.*, 176 F.4th 455, 459 (6th Cir. 2026). As the Sixth Circuit explained:

> In the words of the statute, the parent has a 'right to bring a civil action' only if he or she is 'aggrieved by the findings and decision' of a due process hearing, namely findings and a decision that in one way or another deny the child a free and appropriate education. The existence of a due process hearing 'decision' thus is the necessary preamble of a lawsuit brought under the IDEA. *Without the injury created by a failed due process hearing, no cause of action under the IDEA exists.*

*Id.* (emphasis added) (citations omitted). Thus, a parent "may not sue a school district for special-education-related harms that focus on the denial of a free and appropriate education for a child until the parent has completed a due process hearing under the IDEA." *Id.* at 460.

In this case, to the extent the Moores assert an IDEA claim against Defendants[5] based on ASD discontinuing in-residence virtual instruction without holding an IEP meeting, that claim fails because the Moores have not exhausted their administrative remedies. "The existence of a due process hearing 'decision' [ ] is the necessary preamble of a lawsuit brought under the IDEA. Without the injury created by a failed due process hearing, no cause of action under the IDEA exists." *Alzandani*, 176 F.4th at 459. Even though the Moores represent that "an error disrupted

[5] It not clear whether the Moores assert an IDEA claim in their second amended complaint. In the opening paragraph of the amended complaint, they assert a claim "pursuant to . . . [the] Individuals [w]ith Disabilities Education Act" (Doc. 20, at 1), but they do not mention the IDEA anywhere else in their amended complaint. (*See generally* Doc. 20.) The Moores' response to Defendants' motions to dismiss confuses the issue further, conceding that ASD "cannot be directly liable under the IDEA because, as a private organization, it is not a 'public agency' subject to the IDEA." (Doc. 32, at 1; *see* Doc. 27, at 2.) For the purpose of resolving the motions to dismiss, the Court assumes the Moores intended to make an IDEA claim as to both Defendants in their amended complaint.

the mechanics and/or setup of scheduling a settlement conference, and [Eileen Moore] attempted to file two (2) due process claims with the Tennessee Department of Education," these attempts to avail themselves of administrative remedies are not a substitute for a due process hearing. (Doc. 20, at 5–6); *see id.* Without that hearing, the Moores have no cause of action under the IDEA. *See Alzandani*, 176 F.4th at 459. Accordingly, the Court will grant Defendants' motions to dismiss the Moores' IDEA claim.[6]

**B. Americans with Disabilities Act ("ADA") and Rehabilitation Act**

Defendants next argue that the Court should dismiss the Moores' claims under the ADA and Rehabilitation Act because they failed to exhaust their administrative remedies and have otherwise failed to state a claim for discrimination. (Doc. 25, at 6–10.)[7]

***i. Exhaustion of Administrative Remedies***

Defendants argue that the Court should dismiss the ADA and Rehabilitation Act claims because the Moores are, in essence, seeking relief under these statutes for the denial of a FAPE as guaranteed by the IDEA, and thus the IDEA's exhaustion requirement applies and has not been satisfied. (Doc. 25, at 4–6.)

---

[6] Even beyond this exhaustion-of-remedies problem, it is likely the Moores' complaint otherwise fails to state a claim for violation of the IDEA. First, the Moores only reference the IDEA in the introductory paragraph of the second amended complaint without further explaining why they are entitled to relief under that Act. *See* Fed. R. Civ. P. 8(a) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"). Second, even if a due process hearing decision had been reached, this action is likely untimely. *See* 20 U.S.C. § 1415(i)(2)(B) (explaining that the party bringing a civil action under the IDEA has only "90 days from the date of the decision of the hearing officer to bring such an action"). Finally, the Moores only seek compensatory damages, and thus their amended complaint fails to request the only relief available under the IDEA: injunctive relief. *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147–48 (2023) (explaining "compensatory damages" are "a form of relief everyone agrees IDEA does not provide").

[7] In their response, the Moores appear to only address the second argument. (*See* Doc. 32.) Thus, the Moores' arguments in response are discussed in the accompanying analysis, *infra* Section III.B.ii.

When considering the interaction between the IDEA, the ADA, and the Rehabilitation Act, the Supreme Court clarified that the IDEA "does not prevent a plaintiff from asserting claims under such laws [the ADA and Rehabilitation Act] even if . . . those claims allege the denial of an appropriate public education (much as an IDEA claim would)." *Fry*, 580 U.S. at 161. In certain circumstances, however, IDEA's administrative procedures must be completed before an ADA or Rehabilitation Act claim can be brought in federal court. Specifically, the IDEA "requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is also available' under the IDEA." *Id.* at 165. A suit "seeks relief that is also available under the IDEA" when it seeks relief for the denial of a FAPE, since "that is the only 'relief' the IDEA makes 'available.'" *Id.* (citation modified). In sum, claims under the ADA and the Rehabilitation Act require exhaustion "when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id.* at 170; *see also Alzandani*, 176 F.4th at 459–60 (explaining that parents looking to vindicate their children's special-education rights under the ADA and the Rehabilitation Act must complete the administrative procedures "to the same extent required under the IDEA").

To determine whether denial of a FAPE is the "gravamen of a complaint," courts are instructed to "attend to the diverse means and ends of the statutes covering persons with disabilities," meaning the IDEA at one end and the ADA and Rehabilitation Act at the other. *Fry*, 580 U.S. at 170. In making this determination, courts may ask certain hypothetical questions: "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?"

*Id.* at 171. Courts may also consider whether "a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching midstream." *Id.* at 173 ("A plaintiff's initial choice to pursue that process may suggest that she is indeed seeking relief for the denial of a FAPE—with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy.").

If denial of a FAPE is determined to be the "gravamen of the complaint," the IDEA's exhaustion rule applies to other claims seeking relief for the denial of a FAPE, such as the ADA and Rehabilitation Act. *See id.* at 170. There are several exceptions to the exhaustion rule, however, including that the exhaustion requirement only applies if the plaintiff seeks "relief that is also available under" the IDEA. *Id.* at 165. Thus, if a plaintiff "seeks a 'form of relief' unavailable under the IDEA—say, compensatory damages—the [plaintiff] need not complete a due process hearing before filing an action seeking that relief in federal court." *Alzandani*, 176 F.4th at 460 (citing *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147–8 (2023)). In other words, the exhaustion prerequisite is a condition that "simply is not met in situations . . . where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief . . . [the] IDEA does not provide." *Luna Perez*, 598 U.S. at 147–8.

In this case, the gravamen of the Moores' amended complaint seeks relief for the denial of a FAPE. *See Fry*, 580 U.S. at 169–73. In the paragraph alleging violations of the ADA and Rehabilitation Act, the Moores' amended complaint states that Defendants are liable for the decision of ASD to "cease services and instruction" to Donald and Tyler in their residence and that the decision to stop such educational services caused a disruption in the students' "educational environment" resulting in "the deprivation of educational opportunities." (Doc. 20,

at 6.) Based on these allegations, it is clear that, first, the Moores could not have brought "essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school" because the Moores' claim hinges on Defendants' discontinuance of in-residence remote learning services, which is centered around access to a free and appropriate public education. *See Fry*, 580 U.S. at 170–73; (*see generally* Doc. 20). Second, an "*adult* at the school" could not have "pressed essentially the same grievance" because, again, the grievance is focused on the denial of access to remote learning instruction in the Moores' residence—an adult, such as an employee or visitor of the school, could not make a claim regarding the discontinuance of in-residence remote learning services. *See Fry*, 580 U.S. at 170–73; (*see generally* Doc. 20). Finally, the Moores "previously invoked the IDEA's formal procedures to handle the dispute" before "switching midstream" to filing this action—Eileen Moore filed due process complaints with the Tennessee Department of Education and unsuccessfully tried to schedule a settlement conference between the parties. *See Fry*, 580 U.S. at 170–73; (*see generally* Doc. 20). As a result, the "gravamen of the complaint" seeks relief for the denial of a FAPE. *Fry*, 580 U.S at 169–73.

Since the "gravamen of the complaint" seeks relief for the denial of a FAPE, exhaustion of administrative remedies ordinarily would be a prerequisite to bringing the Moores' ADA and Rehabilitation Act claims. *See Fry*, 580 U.S. at 170. However, an exception to the exhaustion requirement applies here since the Moores "seek[ ] a 'form of relief' unavailable under the IDEA—[ ] compensatory damages." *Alzandani*, 176 F.4th at 459 (citing *Luna Perez*, 598 U.S. at 147–8). Since the Moores do not seek relief available under the IDEA, the Moores' failure to exhaust their administrative remedies does not bar their ADA and Rehabilitation Act claims. *See id.*

### *ii. Discrimination Claims*

Defendants next argue that the Court should dismiss the Moores' ADA and Rehabilitation Act claims because they have not stated a discrimination claim.[8] (Doc. 25, at 7–10.)

The ADA is intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and to "provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1)–(2). The ADA guarantees that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id*. at § 12132. Similarly, the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C.S. § 794(a). "It is well-established that the two statutes are quite similar in purpose and scope." *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997). The ADA and the Rehabilitation Act "share the same substantive standard, . . . despite the linguistic differences between the two acts." *Zibbell v. Mich. Dep't of Hum. Servs*., 313 F. App'x 843, 849

[8] Defendants argue that the Moores failed to make a prima facie case of discrimination. (Doc. 25, at 7.) The Court notes that, to the extent Defendants assert that the Moores' complaint is insufficient for not passing muster under the burden-shifting framework of *McDonnell Douglas*, 411 U.S. 792 (1973), courts do not use the *McDonnell Douglas* test until the summary judgment stage, and thus the Moores' complaint will not be held to that standard. *See Lyman v. Montclair at Partridge Creek, LLC*, No. 23-CV-10131, 2023 WL 6096678, at *5 (E.D. Mich. Sept. 18, 2023) (explaining that it is error to hold pleadings to the *McDonell Douglas* standard at the motion to dismiss stage); *Anderson v. City of Blue Ash*, 798 F.3d 338, 356–7 (6th Cir. 2015) (analyzing Title II of the ADA claims under the *McDonnell Douglas* framework at the summary judgment stage).

(6th Cir. 2009) (citations omitted). "In short, the principal distinction between the two statutes is that coverage under the Rehabilitation Act is limited to entities receiving federal financial assistance, while the ADA's reach extends to purely private entities." *McPherson*, 119 F.3d at 460. As a result, courts review claims brought under the Rehabilitation Act as they would claims brought under the ADA. *Zibbell*, 313 F. App'x at 849.

To state a claim under the ADA and the Rehabilitation Act against a school receiving federal financial assistance, a plaintiff must allege he or she is: "(1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his or her disability." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). "In the education context, a showing of discrimination requires evidence of something more than a school district's failure to provide a FAPE." *Knox Cnty. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023). "A plaintiff may allege disability discrimination under two available theories: intentional discrimination and failure to reasonably accommodate." *Id.* An intentional discrimination claim "lies where the defendant treated someone less favorably on account of his disability; 'proof of discriminatory motive is critical.'" *Id.* (quoting *Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 311 (2d Cir. 2020)) (citation modified). In a failure-to-accommodate claim, the plaintiff must "show that the defendant reasonably could have accommodated his disability but refused to do so" and that "this failure to accommodate impeded his ability to participate in, or benefit from, the subject program." *Knox Cnty.*, 62 F.4th at 1000. Further, the "plaintiff must establish both that his preferred accommodation was reasonable, *and* that the accommodation provided to him was unreasonable." *Id.*

The Moores failed to state a claim of intentional discrimination. (*See generally* Doc. 20.) They have not alleged that Defendants treated Donald and Tyler "less favorably on account of [their] disability." *See Knox Cnty.*, 62 F.4th at 1000; (*see* Doc. 20.) There are also no allegations showing any "proof of discriminatory motive."[9] *See Knox Cnty.*, 62 F.4th at 1000; (*see* Doc. 20.) If anything, the amended complaint concedes that Defendants had a non-discriminatory motive for the decision to cease in-residence services: Defendants, however erroneously, believed that Eileen Moore was "eavesdropping" on Donald and Tyler's classwork in violation of the parties' agreement. (Doc. 20, at 3–4.) Because that basis does not relate to Donald and Tyler's disability, the amended complaint fails to state a claim for intentional discrimination. *See B.S. v. Carter Cnty. Bd. of Educ.*, No. 24-5045, 2025 WL 764610, at *2 (6th Cir. Mar. 11, 2025) (finding that plaintiff failed to state a claim for intentional discrimination where plaintiff's complaint provided a non-discriminatory motive for a school district failing to provide a wheelchair-accessible bus); *Anderson*, 798 F.3d at 357 (explaining that a plaintiff must show that "animus against the protected group was a significant factor in the position taken" by the defendants).

The Moores also failed to state a failure-to-accommodate claim. Rather than showing that "the defendant reasonably could have accommodated [Donald and Tyler's] disability but refused to do so," the Moores allege that Defendants did in fact offer an accommodation: "Bradley County offered the brick and mortar virtual school for [Donald and Tyler] to receive

[9] Additionally, since the Moores only seek compensatory damages, this failure to show intentional discrimination would foreclose their ability to recover under a failure-to-accommodate theory of discrimination. *Hill v. Bradley Cnty. Bd. of Educ.*, No. 1:05-CV-279, 2007 WL 4124495 (E.D. Tenn. Nov. 19, 2007), *aff'd*, 295 F. App'x 740 (6th Cir. 2008) (explaining that when a plaintiff seeks compensatory damages for a violation of Section 504, the plaintiff must show the defendant had discriminatory intent).

services from [ASD] in an attempt to continue 'classroom content.'" (Doc. 20, at 4.) The Moores do not allege that the brick-and-mortar virtual school option was unreasonable or kept Donald and Tyler from participating in a public school program. *See Knox Cnty.*, 62 F.4th at 1001 (explaining that schools must provide a reasonable accommodation, not necessarily the best accommodation or plaintiff's preferred accommodation); *Keller v. Chippewa Cnty.*, 860 F. App'x 381, 386–7 (6th Cir. 2021) (finding that, although plaintiff did not receive his precise preferred accommodation, he still received meaningful access to the government program); *B.S.*, 2025 WL 764610, at *2 (holding that a complaint that fails to show the provided accommodations were unreasonable or that plaintiff's preferred accommodation was reasonable fails to state a claim); (*see generally* Doc. 20.) Even if the Moores showed that this accommodation was unreasonable, the outcome here would remain the same because the Moores did not, as required, allege any facts showing that they made a request for an accommodation or that, to the extent a request was made, their preferred accommodation was reasonable under the circumstances. *B.S.*, 2025 WL 764610, at *2; *Stanciel v. Donahoe*, 570 F. App'x 578, 583 (6th Cir. 2014) ("It is well settled in cases brought under the Rehabilitation Act that reasonable accommodation is not at issue if the plaintiff has never requested accommodations."); *Adams v. Vanderbilt Univ.*, No. 3:23-CV-00001, 2024 WL 1182861, at *21 (M.D. Tenn. Mar. 19, 2024) (finding that, since plaintiff could not point to any "particular communication" in which he "clearly requested an accommodation," the failure-to-accommodate claim must be dismissed); (Doc. 20, at 4–5.) Instead, the Moores merely state that the disruption in Donald and Tyler's educational environment adversely affected them and their ability to earn credits. (Doc. 20, at 5.) Without allegations explaining why receiving the same services from ASD in a different location was an unreasonable accommodation, and that the Moores requested a reasonable

accommodation that Defendants refused to implement, there is no plausible theory that Defendants failed to accommodate Donald and Tyler, and the Moores failed to state a failure-to-accommodate claim.

Since the Moores failed to allege either that Defendants intentionally discriminated against the Moores or that Defendants refused to provide Donald and Tyler with a requested reasonable accommodation, the Moores have failed to state a claim under Title II of the ADA and Section 504 of the Rehabilitation Act.

### C. Violation of Constitutional Rights under 42 U.S.C. § 1983

Defendants next argue that the Court should dismiss the Moores' amended complaint because it fails to state a claim for violations of Donald and Tyler's constitutional rights under 42 U.S.C. § 1983. The Moores allege that Defendants are liable under Section 1983 because the "unilateral exclusion" of Donald and Tyler "from services and instruction by [ASD] while enrolled in the school district for Bradley County" violated the "federal constitutional right of [Donald and Tyler] to due process and equal protection by the Fifth and Fourteenth Amendment to the United States Constitution." (Doc. 20, at 5.) Defendants construed this reference to due process as a claim under the IDEA, discussed *supra*.[10] (*See generally* Docs. 24, 25, 27, 28.) As to the Equal Protection claim, Defendants argue that the Moores have not alleged specific facts

---

[10] Defendants construed the due process argument as part of the Moores' IDEA claim (*See* Doc. 24 ("The [Moores'] Second Amended Complaint seeks to redress what they claim to be a denial of due process in connection with a change in location of special education services from the [Moores'] residence to the campus of Bradley County Schools' virtual school.")). Whether the Moores intended to make a due process claim under the IDEA or through § 1983 is unclear. To the extent the Moores pled a deprivation of due process under the IDEA, that claim is discussed in Section III.A, *supra*. But note that the Moores may make a due process argument under both the IDEA and the Fourteenth Amendment. *See Gregory v. W. Clermont Local Sch. Dist. Bd. of Educ.*, 414 F. Supp. 3d 1064, 1074 (S.D. Ohio 2019) ("That the conduct alleged would also constitute a violation of the procedures guaranteed by the IDEA does not preclude Plaintiff's constitutional challenge.").

showing Donald and Tyler were treated differently on the basis of their disability or that Defendants lacked a rational basis for their actions. (Doc. 28, at 2.)

The Moores' allegations as to the Section 1983 claims are difficult to ascertain. They assert that ASD's "unilateral exclusion" of Donald and Tyler "from services and instruction" violated their constitutional rights. (Doc. 20, at 5.) Based on the allegations in the complaint, it is unclear whether the Moores are asserting that Donald and Tyler's substantive or procedural due process rights were violated. (*See generally* Doc. 20.) The Moores' response does little to elucidate this issue; the response does not mention the due process argument at all and, as to their Equal Protection claim, only argues that "Defendants have failed to set forth a rational reason why ASD discontinued virtual instruction in the home of" the students. (Doc. 32, at 5.) Given that factual allegations should be construed in the plaintiff's favor, *see Thurman*, 484 F.3d at 859, the Court interprets the Moores' amended complaint as advancing procedural due process, substantive due process, and equal protection claims.

**i. Due Process**

To state a claim under Section 1983, a plaintiff must plausibly allege that he was deprived of a constitutional right "by a person acting under color of state law." *Bell v. Ohio State Univ.*, 351 F.3d 240, 248 (6th Cir. 2003). The Fourteenth Amendment guarantees "that one may not be deprived of life, liberty, or property without due process of law." *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000). Due process has two components: (1) procedural due process, "often summarized as 'notice and an opportunity to be heard;'" and (2) substantive due process. *See id.* at 574–5.

Procedural due process "is a right to a fair procedure or set of procedures before one can be deprived of property by the state." *Seal*, 229 F.3d at 574. "To establish a procedural due

process claim, a plaintiff must show that (1) they had a life, liberty, or property interest protected by the Due Process Clause; (2) they were deprived of one of these protected interests; and (3) the state did not afford them adequate procedural rights in depriving them of the protected interest." *Mares v. Mia. Valley Hosp.*, 96 F.4th 945, 951 (6th Cir. 2024).

Here, the Moores do not allege that Donald and Tyler had a life, liberty, or property interest protected by the due process clause that was violated. (*See generally* Doc. 20.) Assuming, for the purpose of resolving the motions to dismiss, that Donald and Tyler do have such an interest, the Moores have not alleged that Donald and Tyler were denied their procedural due process rights when Defendants discontinued in-residence virtual learning services. (*See* Doc. 20, at 5); *see Mares*, 96 F.4th at 951; *see also Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1359 (6th Cir. 1996) (explaining that procedural due process rights may not be implicated when an alternative school is required "absent some showing that the education received at the alternative school is significantly different from or inferior to that received at his regular public school"). Rather, the Moores state in their amended complaint that Defendants did provide them with notice and an opportunity to be heard: Eileen Moore was notified that ASD planned to discontinue in-residence services, and Eileen Moore had the opportunity to, and in fact did, file due process claims with the Tennessee Department of Education regarding the ending of in-residence services. (Doc. 20, at 3–6.) In sum, the Moores have not plausibly alleged that Donald and Tyler had an interest in life, liberty, or property that was violated when Defendants discontinued in-residence learning services, and the Moores have not plausibly alleged a constitutionally deficient procedure. Accordingly, the Moores failed to state a claim that Donald and Tyler's procedural due process rights were violated when Defendants discontinued in-residence learning services.

The interests protected by substantive due process are "much narrower than those protected by procedural due process." *Bell*, 351 F.3d at 249–50. "Substantive due process 'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *Lifestyle Cmtys., Ltd. v. City of Worthington*, 165 F.4th 1013, 1026 (6th Cir. 2026) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). To state a substantive due process claim, a plaintiff must plausibly allege that: (1) plaintiff has a constitutionally protected interest, and (2) the government deprived them of that interest through "arbitrary and capricious action." *Lifestyle Cmtys., Ltd.*, 165 F.4th at 1026 (quoting *Golf Vill. N., LLC v. City of Powell*, 42 F.4th 593, 601 (6th Cir. 2022)).

The Moores fail to state a claim for a violation of Donald and Tyler's substantive due process rights. The Moores do not allege what constitutionally protected interest Donald and Tyler were deprived of. (*See generally* Doc. 20.) Assuming, for the purpose of resolving the motions to dismiss, that Donald and Tyler do have a constitutionally protected interest, the Moores also fail to plausibly allege that Defendants' actions bore "no rational relationship to any public purpose." *Lifestyle Cmtys., Ltd.*, 165 F.4th at 1028 (citations omitted). Instead, the Moores generally point to the harm suffered because of Defendants' decision to cease in-residence services and claim that Defendants' reasoning for denying services was based on a falsehood. (Doc. 20, at 3–5.) These allegations do not satisfy the Moores' burden to plausibly allege that Donald and Tyler had a constitutionally protected interest and that Defendants deprived them of this interest through "arbitrary and capricious action." *See Lifestyle Cmtys., Ltd.*, 165 F.4th at 1026. The Moores therefore fail to state a substantive due process claim.

Without allegations supporting either potential due process claim, the Moores fail to state a claim for violation of due process rights under Section 1983. *See* Fed. R. Civ. P. 8(a)

(providing that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

**ii. Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Equal Protection Clause "does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *S.S.*, 532 F.3d at 457 (quoting *Nordlinge v. Hahn*, 505 U.S. 1, 10 (1992)). For purposes of an equal protection challenge, disabled persons are not a suspect class. *Id.* Thus, a state may "treat disabled students differently, so long as its actions are rationally related to some legitimate governmental purpose." *Id.*

To state an equal protection claim, a plaintiff must plausibly allege facts showing that the government "treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 250, 260 (6th Cir. 2006)). The "threshold element of an equal protection claim is disparate treatment[.]" *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).

The Moores appear to allege that Defendants' discontinuance of in-residence instruction, causing harm to Donald and Tyler, constituted a violation of their equal protection rights. (*See* Doc. 20.)

The Moores failed to make a plausible allegation of disparate treatment in their amended complaint. The Moores did not identify a similarly situated individual who was treated

differently by the Defendants or otherwise make any comparison to a similarly situated person or group. (*See generally* Doc. 20); *see Kelmendi v. Mich. Off. of Ret. Servs.*, No. 25-1087, 2026 WL 936962, at *2 (6th Cir. Jan. 16, 2026) (affirming dismissal of an equal protection claim when plaintiff did not identify a similarly situated individual who experienced different treatment by defendants). Without such a comparison, the Moores cannot plausibly meet the threshold showing of disparate treatment without a rational basis needed to state an equal protection claim under the Fourteenth Amendment. *See Scarbrough*, 470 F.3d at 260. Accordingly, the Moores fail to state an equal protection claim.

## IV. CONCLUSION

For the reasons stated herein, Defendants' motions to dismiss (Docs. 24, 27) are **GRANTED**. This matter is hereby **DISMISSED WITH PREJUDICE**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

***/s/ Travis R. McDonough***
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**